IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA L. SCHROEDER-WILLIAMS, ) <br> Individually and on behalf of the Heirs at Law of ) <br> DAVID WILLIAMS, deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WEBSTER COUNTY, MISSOURI, et al., ) <br> ) <br> Defendants. ) | Case No. 6:22-cv-03317-MDH |

## ORDER

Before the Court is Defendant Missouri State Highway Patrol's ("Defendant MSHP's") or ("MSHP's") and Defendant Trooper J.W. Philpott's ("Defendant Philpott's") separate 12(b)(6) Motions to Dismiss. Plaintiffs have responded in opposition and Defendants have replied in turn. This Court has reviewed all briefing. For reasons herein, Defendants MSHP's Motion to Dismiss is **GRANTED**. Defendant Philpott's Motion to Dismiss is **GRANTED IN PART and DEFERED IN PART**.

## BACKGROUND

The underlying dispute stems from an incident in September 2021 resulting in the death of Mr. David Williams. At that time, law enforcement officers from various agencies were dispatched to an area around Seymour, Missouri "in response to a subject bearing a rifle who was suspected to be involved in an underlying house fire and auto theft." (Doc. 8 at ¶ 14). Officers reported that, once they initially located Mr. Williams, Mr. Williams began walking away from the officers and ignoring officers' verbal commands. While walking away, Mr. Williams occasionally turned

1

toward officers with his rifle in front of him. Mr. Williams then ran to a tree line, at which point officers could no longer see him. Eventually, officers located Mr. Williams in a tree stand. Officers surrounded Mr. Williams who remained in the tree stand. At one point, Mr. Williams communicated with officers about needing water. After this exchange, Defendant Philpott discharged his weapon twice. Directly after Defendant Philpott's shots, Defendant Roye Cole, Webster County sheriff, discharged his firearm toward Mr. Williams. Mr. Williams was struck and killed. At one point, the Amended Compliant appears to claim that Defendant Cole, not Defendant Philpott, was responsible for shooting and killing Mr. Williams. (Doc. 8 at ¶¶ 29-30). Elsewhere, however, the Amended Complaint claims both Defendants Cole and Philpott used deadly force and killed Mr. Williams. (Doc. 8 at ¶¶ 47-48).

In total, Plaintiffs' Amended Complaint alleges Three Counts. Count One alleges Fourth Amendment excessive force violations pursuant to 42 U.S.C.§ 1983, Count Two alleges failure to implement appropriate policies and failure to train pursuant to § 1983, and Count Three alleges wrongful death. At issue presently are Count One against Defendant Philpott, Count Two against MSHP, and Count Three against Defendants Philpott and MSHP. Plaintiffs sue Defendant Philpott in both individual and official capacities. (Doc. 8 at ¶ 9).[1]

**STANDARD**

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving

---

[1] Plaintiffs indicate they no longer wish to pursue Section Two's §1983 claim against Defendant MSHP. (Doc. 21 at 2). Count Two is, therefore, dismissed without prejudice against Defendant MSHP.

2

party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). When assessing a complaint for a 12(b)(6) motion, the court considers the complaint itself and documents necessarily embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

## ARGUMENT

I. **Count One: 42 U.S.C. § 1983 Excessive Force Against Defendant Philpott in his Individual and Official Capacities**

   a. **Official Capacity**

Plaintiffs' Count One cites the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983 to allege excessive force against Defendant Philpott in his personal and professional capacities. It is settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). It is also settled that the Eleventh Amendment ensures a state may be sued only when consent for such lawsuits has been "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). Such immunity applies also to agencies of the state. *See Neil By & through Cheeks v. Belmar*, 2019 WL 1359293, at *3 (E.D. Mo. Mar. 26, 2019) ("It is well established that the MSHP is an agency of

the State of Missouri entitled to Eleventh Amendment immunity."). Such immunity applies to § 1983 claims. *Will* at 66.

In the present matter, Defendant Philpott argues, and Plaintiffs do not appear to contest, that Eleventh Amendment immunity bars Plaintiffs' Count One excessive force claim against Defendant Philpott in his official capacity. This Court agrees. Nothing indicates Missouri has specifically waived immunity to Plaintiffs' § 1983 excessive force claim. Accordingly, Plaintiffs' Count One claim against Defendant Philpott in his official capacity is **DISMISSED** with prejudice.

b. **Individual Capacity**

With respect to Plaintiffs' Count One excessive force claim against Defendant Philpott in his individual capacity, Defendant Philpott argues for dismissal based on qualified immunity. Discussing qualified immunity, the Supreme Court has held, "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). A right is clearly established when the "contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). Crucially, dismissal of claims pursuant to

a 12(b)(6) motion because of qualified immunity, requires defendants "show they are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).

The Amended Complaint's specific allegations related to Defendant Philpott remain rather vague. At one point, the Amended Compliant appears to claim that Defendant Cole, not Defendant Philpott, shot and killed Mr. Williams. (Doc. 8 at ¶¶ 29-30). Elsewhere, however, the Amended Complaint claims both Defendants Cole and Philpott used deadly force and killed Mr. Williams. (Doc. 8 at ¶¶ 47-48). The Amended Complaint also fails to specify whether Defendant Philpott aimed his firearm toward Mr. Williams before shooting. Nor does the Amended Complaint indicate whether Mr. Williams possessed or displayed a firearm while in the tree stand. The Amended Complaint also provides no insight into how much time passed between the point at which Defendants observed Mr. Williams with a firearm and when Mr. Williams was shot and killed. All of this information is significant in making a determination about whether Defendant Philpott's actions amount to a violation of a clearly established statutory or constitutional right.

While granting a motion to dismiss on qualified immunity grounds requires defendants to show they are entitled to qualified immunity on the face of the complaint, qualified immunity constitutes immunity from suit altogether, and therefore should be resolved at the earliest stage of litigation. *Scott v. Harris*, 550 U.S. 372, n. 2 (2007). The Eighth Circuit has also stressed, "the importance of doing the qualified immunity analysis early in litigation because those entitled to qualified immunity hold an entitlement not to stand trial or face the other burdens of litigation. *O'Neil v. City of Iowa City, Iowa,* 496 F.3d 915, 917 (8th Cir. 2007) (citations omitted). Because the Amended Complaint contains what appears to be conflicting allegations as to who shot and killed Mr. Williams as well as vague allegations about interaction between Defendant Philpott and Mr. Williams, Plaintiffs are ordered to re-plead with greater specificity Count One's excessive

5

force allegations against Defendant Philpott. Plaintiffs' Amended Count One allegations against Defendant Philpott must include additional facts to aid this Court in evaluating Defendant Philpott's qualified immunity argument. To the extent possible, Plaintiffs' allegations must include information about whether: 1) Mr. Williams possessed a firearm at the time of his death; 2) Mr. Williams pointed a firearm toward officers while in the tree stand; 3) Defendant Philpott aimed his firearm at Mr. Williams before shooting; 4) Defendant Philpott shot Mr. Williams; 4) what if any communication occurred between Mr. Williams and officers while Mr. Williams remained in the tree stand; and 5) how much time elapsed between when officers last observed Mr. Williams with a firearm and when Defendant Philpott discharged his weapon. Defendants shall have an opportunity to answer or otherwise respond to Plaintiffs' Amended Count One allegations, including any renewed qualified immunity argument. Until Plaintiffs file an Amended Count One and Defendant Philpott answers or otherwise responds, this Court will defer ruling on Defendant Philpott's Motion to Dismiss as it relates to Plaintiffs' excessive force claims against Defendant Philpott in his individual capacity.

> II. **Count Three: Wrongful Death Claim Against MSPH and Defendant Philpott in his Individual and Official Capacities**
>     a. **Wrongful Death Against MSHP and Defendant Philpott in his Official Capacity**

Under Count Three, Plaintiffs allege wrongful death against all defendants. As discussed above, a lawsuit against officials in their official rather than individual capacities functions as a suit against official's office itself. *Will* at 71. The wrongful death claim against MSHP and Defendant Philpott are, therefore, analyzed through the same lens. Under Missouri statute, "public entities are generally immune from suits for their negligent acts." *Gilmore v. Missouri Dep't of Soc. Servs., Children's Div.*, 658 S.W.3d 146, 152 (Mo. Ct. App. 2022). See Mo. Rev. Stat. §

537.600.1 (tort immunity in effect unless specifically waived). Missouri statute has waived tort immunity for the following situations.

> Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Mo. Rev. Stat. § 537.600.1 (2).[2]

Plaintiffs argue the above language waives sovereign immunity for Count Three's wrongful death claim. More specifically, Plaintiffs contend that MSHP owned the firearm Defendant Philpott discharged and that Defendant Philpott's handling of the weapon with the safety disengaged constituted a dangerous condition. This, however, reflects an attenuated application of Missouri's dangerous condition waiver of sovereign immunity.

Under Missouri law, the test of whether something constitutes a dangerous condition, "is whether the condition was dangerous because its existence, without intervention by third parties, posed a physical threat to plaintiff." *Gilmore* at 153. Defendant Philpott's handling of the firearm with safety disengaged is not a "condition" that could plausibly be rendered safe by third-party intervention. A decision to disengage a firearm's safety is not comparable to, for example, a defective chair in a public space. *See Gilmore v. Missouri Dep't of Soc. Servs., Children's Div.*, 658 S.W.3d 146, 153 (Mo. Ct. App. 2022) (defective chair in public space that injured plaintiff can fall under waiver of immunity statute). Nor is that decision akin to, for example, a public

---

[2] It also appears Missouri statute waives immunity for some entities when: 1) a public employee negligently operates a motor vehicle and injures someone; 2) when a municipality causes injury while performing a proprietary function; and 3) to the extent a municipality has procured insurance to protect against certain liabilities. *Div. of Emp. Sec., Missouri v. Bd. of Police Commissioners*, 864 F.3d 974, n4 (8th Cir. 2017). There is no indication any of these additional examples of waiver applies to the present matter.

sidewalk immediately next to a steep ledge. *See Pinnell v. City of Union*, 579 S.W.3d 261, 266 (Mo. Ct. App. 2019) (sidewalk immediately next to thirteen-foot drop off may reasonably constitute dangerous condition). Plaintiffs' inability to show that Defendant Philpott's decision to disengage the firearm's safety feature constitutes a dangerous condition, demonstrates Missouri statute has not waived sovereign immunity for Plaintiffs' wrongful death claim. Accordingly, Plaintiffs' wrongful death claim is **DISMISSED** with prejudice as to MSHP and Defendant Philpott in his official capacity

### b. Wrongful Death against Defendant Philpott in his Individual Capacity

Defendant Philpott argues he is entitled to official immunity with respect to the wrongful death claim against him in his individual capacity. Under Missouri law, official immunity is a judicially-created doctrine that shields state employees from individual liability for performance of official discretionary acts or omissions. *Riordan v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 242 F. Supp. 2d 635, 639 (W.D. Mo. 2003). Official immunity, however, extends to neither ministerial acts nor acts committed with bad faith or malice. *Jiang v. Porter*, 156 F. Supp. 3d 996, 1005-06 (E.D. Mo. 2015). Discretionary official acts require "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (citations omitted). On the other hand, ministerial acts are clerical in nature and are performed without the exercise of individual judgment. *Id*. Finding that someone is entitled to official immunity does not preclude a finding that the defendant's conduct constituted negligence. *Id*. at 611. Rather, official immunity simply "provides that an officer will not be liable for damages caused by his negligence." *Id*. Missouri courts have found that official immunity

8

ordinarily extends to MSHP troopers performing official discretionary duties. *State ex rel. Barron v. Beger*, 655 S.W.3d 356, 361 (Mo. 2022).

It is plain from the Amended Complaint alone that Defendant Philpott, to the extent that Plaintiffs' claims implicate him in Mr. Williams' death, was engaged in a discretionary official activity at the time of Mr. Williams' death. The Missouri Supreme Court has held that, "'It is hard to imagine a setting more demanding of judgment than one in which line officers ... confront a person who has recently flourished a gun.' Situations 'teeming with the necessity for quick judgment calls' are exactly the types of decisions that 'official immunity was established to protect public officials from.'" *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 194 (Mo. 2019), *citing Green v. Denison*, 738 S.W.2d 861, 865 (Mo. 1987). As discussed before, the Amended Complaint appears silent on exactly how much time passed between when Defendant Philpott observed Mr. Williams with a gun and when Mr. Williams died. This silence, however, does not indicate that Defendant Philpott's actions were not discretionary. Plaintiffs argue that, "walking the perimeter of the tree line with his rifle lowered, safety disengaged and right hand on the trigger was not discretionary" because this violates fundamental gun safety rules. But Plaintiffs' complaint fails to allege that Defendant Philpott's discharge of his weapon was something other than intentional. Rather, the Amended Complaint makes clear that Defendant Philpott discharged his weapon, not while actively walking the tree line, but instead only after Defendant Cole stated that Mr. Williams was in Defendant Cole's line of vision. More importantly, the Amended Complaint makes clear that Defendants suspected Mr. Williams was involved in a violent felony. The Amended Complaint also makes clear that Mr. Williams was actively resisting arrest and that he had recently displayed a firearm to officers. Taken together, these allegations indicate Defendant Philpott's actions were far from the ministerial and clerical acts that form the exception to the official

immunity rule. *See State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019) ("a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials"). It is plain from Plaintiffs' Amended Complaint alone that Defendant Philpott exercised significant discretion in assessing the risk created by Mr. Williams' actions, identifying how to most effectively respond to that risk, and executing that response.

Plaintiffs next argue that, if this Court should determine that Defendant Philpott's actions were discretionary, official immunity remains inapplicable, as Defendant Philpott's shooting reflected a reckless or deliberate indifference to Mr. Williams' constitutional rights. As discussed above, official immunity does not apply to official discretionary acts committed in bad faith or with malice. *Jiang v. Porter*, 156 F. Supp. 3d 996, 1006 (E.D. Mo. 2015) (citations omitted). Courts have found that malice requires a showing that a defendant acts by "wantonly doing that which a person of reasonable intelligence would know to be contrary to his or her duty and which the defendant intends to be prejudicial or injurious to another." *Id.* (citations omitted). On the other hand, bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (citations omitted). Plaintiffs' Amended Complaint, however, fails to sufficiently allege facts to show either malice or bad faith on the part of Defendant Philpott. The Amended Complaint alleges only that Defendant Philpott discharged his firearm, not that Defendant Philpott intended to harm Mr. Williams. Even assuming, however, Defendant Philpott did intend to injure Mr. Williams, the Amended Complaint does not allege that such an intent was at odds with Defendant Philpott's duty as a MSHP trooper responding to a suspect actively resisting arrest, who recently displayed a firearm toward law enforcement officers. Accordingly, Plaintiffs' Count Three Wrongful Death claim is **DISMISSED** without prejudice, as to Defendant Philpott in his individual capacity.

Plaintiff is granted leave to amend the wrongful death claim against Defendant Philpott in his individual capacity to allege any facts believed to support a finding of malice or bad faith.

## CONCLUSION

For foregoing reasons, Defendant MSHP's Motion to Dismiss is **GRANTED**. Count Two against MSHP is dismissed without prejudice, while Count Three is dismissed with prejudice. Defendant Philpott's Motion to Dismiss is **GRANTED IN PART and DEFERRED IN PART**. Count One's § 1983 claim against Defendant Philpott in his official capacity is dismissed with prejudice, while ruling on Count One's individual capacity claim is **DEFERRED** until Plaintiffs re-plead their § 1983 excessive force allegations against Defendant Philpott with greater specificity. Count Three's wrongful death claim is dismissed with prejudice against Defendant Philpott in his official capacity and dismissed without prejudice as to Defendant Philpott in his individual capacity. Plaintiffs are ordered to file an Amended Count One against Defendant Philpott in his individual capacity no later than July 31, 2023 with the additional details specified above. If Plaintiffs so desire, they are ordered to file an Amended Count Three against Defendant Philpott in his individual capacity with the additional specificity identified above. Defendant Philpott is ordered to answer or otherwise respond to Plaintiffs' Amended Complaint no later than August 10, 2023.

**IT IS SO ORDERED.**

Dated: July 17, 2023  /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**