IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA L. SCHROEDER-WILLIAMS, Individually and on behalf of the Heirs at Law of DAVID WILLIAMS, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>WEBSTER COUNTY, MISSOURI, et al.,<br><br>Defendants. | Case No. 6:22-cv-03317-MDH |

## ORDER

Before the Court is Defendant Trooper J.W. Philpott's ("Defendant Philpott's") 12(b)(6) Motion to Dismiss. Plaintiff responded in opposition and Defendant replied in turn. This Court has reviewed all briefing. For reasons herein, Defendant Philpott's Motion to Dismiss is **GRANTED.**

## BACKGROUND

The underlying dispute stems from an incident in September 2021 resulting in the death of Mr. David Williams. At that time, law enforcement officers from various agencies were dispatched to an area around Seymour, Missouri "in response to a subject bearing a rifle who was suspected to be involved in an underlying house fire and auto theft." (Doc. 42 at ¶ 13). It appears undisputed that, once officers initially located Mr. Williams, Mr. Williams began walking away from the officers and ignoring officers' verbal commands. (Doc. 42 at ¶ 20). While walking away, Mr. Williams occasionally turned toward officers with his rifle in front of him. Mr. Williams then ran to a tree line, at which point officers could no longer see him. Eventually, officers located Mr. Williams in a tree stand. Officers surrounded Mr. Williams who remained in the tree stand. At one

1

point, Mr. Williams communicated with officers about needing water. After this exchange, Defendant Philpott discharged his weapon twice. Directly after Defendant Philpott's shots, Webster County Sheriff Roye Cole[1] discharged his firearm toward Mr. Williams, striking and killing Mr. Williams.

The Second Amended Complaint is plain that Sheriff Cole is directly responsible for striking and killing Mr. Williams. Plaintiff does not explicitly contend that Defendant Philpott's discharge was accidental, reckless, or negligent. Plaintiff does contend, however, that Defendant Philpott "lowered his rifle and attempted to adjust his radio so he could hear the deputies radio traffic better" and failed to activate the gun's safety function once lowered. (Doc. 48 at ¶¶ 48-49). According to Plaintiff, Defendant Philpott's discharge caused Sheriff Cole to fire his weapon and Defendant Philpott should have foreseen this consequence. (Doc. 48 at ¶ 52). This series of events occurred at least in part, according to Plaintiff, because Defendant Philpott failed to promptly radio to other law enforcement officers nearby that he, rather than Mr. Williams, had discharged his weapon. (Doc. 48 at ¶¶ 55-56).

As it relates to Defendant Philpott, Plaintiff has alleged two counts: Count One alleges violation of the Fourth Amendment of the United States Constitution and 42 U.S.C.§ 1983 and Count Three alleges wrongful death under Missouri law. Plaintiff sues Defendant Philpott in his individual capacity alone. (Doc. 42 at ¶ 8). This Court previously granted leave to Plaintiff specifically to "amend the wrongful death claim against Defendant Philpott in his individual capacity to allege any facts believed to support a finding of malice or bad faith." (Doc. 38 at 11). The same order instructed that "Count One's individual capacity claim [against Defendant

---

[1] Sheriff Cole was previously dismissed from this lawsuit following a settlement with Plaintiff.

Philpott] is deferred until Plaintiff[] re-plead[s] the[] § 1983 excessive force allegations against Defendant Philpott with greater specificity." (Doc. 38 at 11).

## STANDARD

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). When assessing a complaint for a 12(b)(6) motion, the court considers the complaint itself and documents necessarily embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

## ARGUMENT

I.   **Count One: 42 U.S.C. § 1983 Excessive Force Against Defendant Philpott in his Individual Capacity**

The Fourth Amendment of the United States Constitution protects against, *inter alia*, unreasonable seizures of one's person. *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (citations omitted). For Fourth Amendment purposes, one's person is seized when an officer applies physical

force, no matter the severity, or displays a show of authority to which the subject yields. *Id*. at 625-26. A show of authority without actual submission shows no seizure has occurred. *Brendlin v. California*, 551 U.S. 249, 254 (2007). In addition, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Taking all allegations in the Second Amended Complaint as true, it is plain Defendant Philpott's conduct did not yield a Fourth Amendment seizure of Mr. Williams. Crucially, for an officer's conduct to constitute a Fourth Amendment seizure, the alleged conduct "requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). In *Brower*, the Supreme Court found that Plaintiffs had sufficiently alleged a Fourth Amendment seizure of a decedent by claiming officers: 1) placed a semi-truck across a highway to prevent the driver of a fleeing car from continuing to evade; 2) concealed the truck by placing it behind a curve; 3) and blinded the fleeing driver with headlights from another police car. *Id*. at 594. The Brower plaintiff's complaint specifically alleged that the driver's death during the collision with the truck proximately resulted from the alleged police conduct. In contrast, the Supreme Court has also held that no seizure occurs when an officer intends to stop a fleeing suspect with the show of authority inherent in a continued pursuit, but unintentionally stops the suspect by crashing into him with the police cruiser. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).

Key to the Supreme Court's decision in *Brower* and *County of Sacramento* is that the *Brower* plaintiff alleged that the officers' conduct reflected an intentional, coordinated effort on the part of the defendant officers with the specific purpose of effecting a seizure of the decedent. The Supreme Court clarified, "that a Fourth Amendment seizure does not occur whenever there is a

4

governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied"*. *Id.* at 596-97. In the present matter, the Second Amended Complaint, even liberally construed, makes no such allegation. Plaintiff does not allege Defendant Philpott has applied means with the specific intent of terminating Mr. Williams' freedom. Instead, Plaintiff alleges Defendant Philpott discharged his firearm toward the ground, pointed away from Mr. Williams, and then failed to promptly notify other officers that he had discharged his firearm, causing Sheriff Cole to shoot and kill Mr. Williams. Though Plaintiff stops short of explicitly claiming Defendant Philpott's shots were accidental, reckless, or negligent, Plaintiff does allege that Defendant Philpott's shots were due at least in part to his failure to activate the firearm's safety mechanism, further demonstrating absence of intent. The Second Amended Complaint makes clear that Mr. Williams was struck only by bullets from Sheriff Cole's firearm, not from that of Defendant Philpott. There is no allegation that the actions of Defendant Philpott and Sheriff Cole somehow reflect a coordinated effort to intentionally acquire physical control of Mr. Williams. For these reasons, Plaintiff has failed to allege a Fourth Amendment seizure related to the conduct of Defendant Philpott.

## II. Count Three: Wrongful Death Claim Against Defendant Philpott in his Individual Capacity

This Court previously found Defendant Philpott "was engaged in a discretionary official activity at the time of Mr. Williams' death." (Doc. 38 at 9). This finding entitles Defendant Philpott to official immunity as to Plaintiff's Count Three wrongful death claim against Defendant Philpott in his individual capacity. That holding still stands. As discussed before, however, this Court

5

granted leave to Plaintiff specifically to "amend the wrongful death claim against Defendant Philpott in his individual capacity to allege any facts believed to support a finding of malice or bad faith." (Doc. 38 at 11). This was done in part because of lack of clarity in the First Amended Complaint and also because Missouri law recognizes an exception to official immunity for official acts committed in bad faith or with malice. *Jiang v. Porter*, 156 F. Supp. 3d 996, 1006 (E.D. Mo. 2015) (citations omitted).

Courts have found that malice requires a showing that a defendant acts by "wantonly doing that which a person of reasonable intelligence would know to be contrary to his or her duty and which the defendant intends to be prejudicial or injurious to another." *Id*. (citations omitted). On the other hand, bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*. (citations omitted). It is plain from allegations in Plaintiff's Second Amended Complaint that Defendant Philpott did not act with malice or bad faith in the events that led to Mr. Williams' death. Plaintiff's wrongful death allegations against Defendant Philpott, if accepted as true, amount to mere negligence, which is insufficient to show the malice or bad faith that would make official immunity unavailable. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (official immunity simply "provides that an officer will not be liable for damages caused by his negligence.").

6

Case 6:22-cv-03317-MDH   Document 61   Filed 03/07/24   Page 6 of 7

## CONCLUSION

For foregoing reasons, Defendant Philpott's Motion to Dismiss is **GRANTED**. Plaintiff's Second Amended Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated: March 7, 2024                                              /s/ Douglas Harpool
                                                                  **DOUGLAS HARPOOL**
                                                                  **United States District Judge**